In the Matter of the Estate of JOSEPH J. MALLOY, Deceased. MARY CAREY, Appellant; ALLAN P. McKAIN, as Executor, etc., of JOSEPH J. MALLOY, Deceased, Respondent.

Third Department, December 29, 1937.

*H. E. Blodgett* [*Howard Murrin* of counsel], for the appellant.

*George H. Smith*, for the respondent.

CRAPSER, J. The proceeding was brought for the purpose of construing the thirty-fifth paragraph of the will of Joseph J. Malloy, deceased, and to determine the validity of an instrument in writing, purporting to be a contract, signed by the residuary legatees named in the will of the said deceased.

The executor commenced the proceeding by a petition, addressed to the Surrogate's Court of Schenectady county, in which he asked for the construction of the thirty-fifth paragraph of the will, and for the approval of the instrument executed by the residuary legatees.

Mary Carey, the only living sister of the deceased, filed an answer to the petition. By stipulation between the attorneys the matter was transferred to the Supreme Court and certain questions were raised for decision. Trial was had before Justice LAWRENCE without a jury and Mary Carey appeals from the decision and judgment of Justice LAWRENCE.

Joseph J. Malloy, the deceased, lived in Schenectady, N. Y. He was president of the Malloy Construction Company.

In October of 1935, Malloy, who owned a considerable amount of real estate around Schenectady and vicinity, was anxious to get his affairs in shape. His only son had died a short time previous and he had no children; he had one sister and nieces and nephews and other persons who were distantly related to him. He told Davis to take the deeds and to get the descriptions in shape to

make deeds. Some surveying had to be done and some right of ways changed and Mr. Malloy employed Mr. Sebring, a civil engineer, to do that work. When the descriptions were ready he told Mr. Davis to draw the thirty-one deeds in Schenectady and Albany counties; he told him whom to put in for grantees and to prepare a satisfaction of a certain mortgage.

When these were ready they were taken to the office of Mr. George H. Smith, a lawyer of Schenectady, and Mr. Malloy executed them and they were acknowledged before George H. Smith, notary public. Then Mr. Malloy took the deeds and gave them to George A. Davis and said to him, " Take these deeds and ' after I kicked in,' is the words he used, he meant death, that I should see that they were delivered to the persons they were made out to."

Davis never had any further conversation with Malloy about the deeds and Davis took the deeds from Smith's office to the office of the J. J. Malloy Construction Company and put them in the safe for safekeeping. The safe was never locked; it was kept closed and anybody could open it by turning the handles. The combination was not used.

Davis was present with Malloy again in Smith's office on January 2, 1936, when the will which has been admitted to probate was drawn and executed. Mr. Malloy said to Mr. Smith: " You will not have to bother with the real estate because that is already taken care of." He said in regard to two pieces of property that were not covered by the deeds that he would take care of them later.

Malloy drew and executed his last will and testament on January 2, 1936; he did not mention in it any real estate.

The deeds and the satisfaction of mortgage executed in Smith's office and given to Davis to be delivered after Malloy's death and placed in the safe by Davis were found after Malloy's death in his safe deposit box to which he alone had access.

There is no proof in the record of when Malloy took the deeds from the safe or why, and he never countermanded his orders to Davis or changed his instructions.

Davis was a bookkeeper of the Malloy Construction Company and did work for Mr. Malloy, its president; he was subject to his orders. So far as the record shows there were no special contract relations between Malloy and Davis or between Davis and the grantees in so far as the deeds were concerned. When Davis took the deeds he put them in Malloy's safe to which Malloy had access and the strong inference is that Malloy took the deeds and put them in his own safe deposit box to which he alone had access and where they were found after his death by the executor. Davis

was not the agent of the grantees named in the deeds. So far as the record shows they had no knowledge of the deeds until they were found in the safe deposit box of the testator after his death.

There is no proof in the record whatever of the necessary delivery contemplated by the law to divest Malloy's title. According to the record he did not part with possession or control of the property. The title, therefore, was in Malloy at the time he died and passed under the residuary clause of his will.

The agreement dated the 9th day of September, 1936, executed by the residuary legatees, authorizing the executor to deliver the deeds, states that the deeds were never legally delivered.

The deeds never having been legally delivered as set forth in the petition and agreement entered into on the ninth of September, no title to the property described was passed from Malloy and the title passed under the residuary provisions of his will.

The agreement was not to become effective until confirmed by the surrogate, which has never occurred. The property could not be conveyed in the way it was attempted to be done in this case. The executor had no power to deliver the deeds and the agreement entered into is ineffectual to confer power upon him to pass any title to the property.

At the time Mary Carey signed the agreement in question, George A. Davis, the same person to whom the deeds were delivered, went to Albany at someone's suggestion to bring Mrs. Carey to the meeting which was going to take place on September ninth. When he arrived at the Mary Carey residence he told her that he had come to take her over; she asked about taking her daughter with her and Davis replied, "As I understand it, there is no one to be present only the seven residuaries," and that she could come along if she wanted to but would not be able to go into the room because only the seven were to be there with their attorneys.

Mary Carey was seventy-six years old at the time; she was born in Ireland; she had attended school only two months; she had never been able to read or write; she never had owned any real property or transacted any business or had any bank account; she was not permitted to bring her daughter; she had no attorney present although many of the others, if not all, were present with their attorneys. When she got to the bank where the meeting was held she met Anna Dando, a stepdaughter of Joseph J. Malloy, deceased, who spoke to Mary Carey and said, " 'Are you going to sign to-day?' She said, ' I don't know what to do, what shall I do?' I says, ' Don't sign.' I said, ' If you want more money, don't sign.' * * * She said, ' I don't know what to do, what

shall I do?' " Then Mr. George Smith, the lawyer, came over and took Mrs. Carey's arm and walked upstairs. All the other residuaries were present with their lawyers. Mr. McKain, the executor, was present, and Mr. Smith, his lawyer, was present.

On September 2, 1936, previous to the meeting, the attorney for the executor sent a letter to the seven residuary legatees inviting them to come to the Citizens Trust Company in Schenectady on September 9, 1936, at three P. M., " for the purpose of ascertaining whether or not the above named residuary legatees of the last will and testament of Joseph J. Malloy intend and desire to comply with the wishes of the above named decedent in delivering to certain persons named as grantees, deeds of real estate   *   *   *. No one but the residuary legatees and their attorneys will be allowed to attend this meeting."

On September ninth all the parties excepting Mrs. Deneen met at the bank; all were represented by attorneys excepting Mrs. Sheldon, who knew about the agreement, Helen Warner, the daughter of Mrs. Dando, neither of whom signed, the latter being represented by an attorney, and Mary Carey and William Malloy.

Mr. McKain, the executor, stated the purpose of the meeting in a somewhat extended statement; he said, " These deeds passed but I thought it showed the intent of Mr. Malloy making these deeds because they were not mentioned in the will in any way, and it was certainly carrying out his intention of letting these deeds pass.   *   *   *   My only object was to try to carry out Mr. Malloy's wishes, which I thought were very plain, what he wanted to do with the property." Mr. McKain then said that the property was in poor repair and an expense to the estate.

Mr. Smith, the attorney, read the agreement. Mrs. Dando advised Mrs. Carey not to sign, to which she replied, " I am going   *   *   *   to carry out my dead brother's wishes."

The amount of the property involved in the deeds was about $91,000 and Mary Carey was entitled to a one-seventh interest in it. She did not know that some of the signers were profiting by obtaining the property in part. She did not know that to secure the signature of Anna Dando to said agreement Fred Sheldon, William H. Malloy, Helen Warner, Julia Ashline, Frank Dwyer, Kitty Dwyer, Frances Sheldon, Martha Hamilton and George W. Serviss agreed to pay the said Anna Dando $3,500 in consideration of said contract and did pay her $1,000 on December 17, 1936, when she signed the contract, the balance of $2,500 to be paid by them to her when said deeds were delivered and said contract approved by the Surrogate's Court.

The agreement was never approved by the surrogate of Schenectady county and before such approval Mary Carey withdrew her signature to that agreement.

Many of the persons signing the agreement benefited by its provisions as they received property under the deeds. This was not true with Mary Carey; she was giving up an interest in a large amount of property without receiving any benefit. She was laboring under the belief that she was carrying out her dead brother's wish because the executor and Smith both stated that it was their opinion that such was the fact. She was present without being represented by an attorney while most of the others had their attorneys present. She was dealing with the president of a bank as executor and with his attorney.

A fair consideration of all the evidence would seem to indicate that she was not dealing on an even footing with the others. She was overreached in this deal. It might be said that the circumstances are sufficient to constitute either actual or constructive fraud in obtaining her signature to the agreement.

There was no legal delivery of these deeds passing title to the grantees. A delivery to be effectual must be to some third person on behalf of the grantee. (*Herrmann* v. *Jorgenson*, 263 N. Y. 348; *Saltzsieder* v. *Saltzsieder*, 219 id. 523; *Diefendorf* v. *Diefendorf*, 132 id. 100.)

The agreement which is sought to be enforced asserts that the deeds were not delivered and that the property belonged to the estate; if that was so, the contract could not by authorizing the executor to deliver the deeds convey the property, the title of which vested in the residuary legatees under the will; it could only be conveyed by proper deeds; no title would pass under this agreement. I know of no authority giving the surrogate power to approve of such a contract conveying property. I cannot see that there were any mutual promises that would furnish a consideration for the signing of this agreement; some signing the agreement received money and some property; Mary Carey received nothing. It cannot be correctly said, under those circumstances, that there were mutual promises sufficient to support the contract.

Under all the circumstances the burden of proof was upon the petitioner. These people were dealing with an old and illiterate woman who was sentimentally affected by the death of her brother who had always been kind to her. The burden was upon the executor, the petitioner in this case, and his attorney to establish by competent evidence and to make it clear that Mary Carey knew what she was doing, that she was fully advised of all the facts and that she was competent to apprehend without the advice of

legal counsel the result of her act. This burden has not been sustained.

The decision of the trial court should be reversed and a judgment granted in favor of Mary Carey as asked for by her answer, with costs payable out of the estate.

HILL, P. J., MCNAMEE, BLISS and HEFFERNAN, JJ., concur.

Decision of the trial court reversed on the law and facts, and a judgment granted in favor of Mary Carey as asked for by her answer, with costs payable out of the estate.

The court reverses the trial court's refusal to find findings of fact seven and nine, contained in the decision, and makes the findings of fact of the matters therein stated, and the court makes the following additional finding of fact to be numbered as follows:

*Twenty-two.* That Mary Carey did not understand or comprehend the legal effect of said agreement or the terms or conditions thereof.

The court reverses, revokes and annuls the following conclusions of law contained in the decision, one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen and fifteen, and makes the following conclusions of law:

1. That George A. Davis was the agent of the testator herein and was not the agent of the grantees mentioned in said deeds, or any of them, or the agent of the mortgagor named in the discharge of said mortgage.

2. That the testator after the execution of said deeds and discharge of said mortgage exercised all dominion and control and ownership over same.

3. That the delivery of said deeds and discharge of mortgage by the testator to said George A. Davis was not a delivery of the title thereto to the grantees named therein or to the mortgagor as to the discharge of said mortgage.

4. That the placing of said executed deeds and discharge of mortgage by the said Davis in the unlocked safe of the Malloy Construction Company was not delivery of said deeds and discharge of mortgage to the grantees thereof or to said mortgagor.

5. That the recital in said deeds that prior to the execution and delivery thereof the testator was unmarried, was placed in the acknowledgment clause thereof prior to the execution and acknowledgment of said deeds and delivery thereof to the said Davis.

6. That sometime subsequent to the placing of said deeds and discharge of mortgage in the safe of the Malloy Construction Company, the testator placed said deeds in his safety deposit box at the Citizens Trust Company, Schenectady, N. Y.

7. That no person other than the testator had access to such safety deposit box.

8. That there was no legal delivery of the title of the premises described in each of the thirty-one respective deeds, nor was said mortgage discharged, there being no delivery of the satisfaction piece thereof to the mortgagor, and that the legal title to said real property and said mortgage, on the death of the testator, was in the testator and became a part of the testator's estate.

9. That said agreement of September 9, 1936, is voidable because it is without legal consideration to support it.

10. That said agreement of September 9, 1936, is a memorandum to make a gift.

11. That the offer of Mary Carey to make said gift was withdrawn before acceptance by the grantees and the mortgagor and before approval of the court.

12. That when Mary Carey executed the agreement of September 9, 1936, she was not fully informed of her rights under the agreement and she was led to believe in doing so that she was carrying out the wishes of her dead brother and she was not informed that certain persons executing the agreement were to receive benefits, whereas she was to suffer a loss, or that certain persons executing the agreement were to be paid for their signatures, and she executed the agreement by reason of material misrepresentations and because all the facts surrounding the agreement were not disclosed to her before she signed the same.

13. That the said Mary Carey received no benefit but suffered a detriment by the execution of the agreement of September 9, 1936.

14. That the agreement of September 9, 1936, imposes no obligation on the part of Mary Carey to pay to any person any sum of money paid by them to Anna Dando to procure the signature of Anna Dando to said agreement.

15. That the thirty-fifth paragraph of said will, disposing of the residuary estate of said testator, is hereby construed as follows: The trusts set up herein are invalid and void for the reason that said trusts are naked and passive trusts. That there is no unlawful suspension of the power of alienation. That after the payment of the specific legacies, taxes, debts and costs of administration, the residuary estate is hereby construed to be divided in seven equal parts, the same to be immediately paid to William H. Malloy, Mary Carey, Anna Dando, Kitty Dwyer, Frances Sheldon, Nellie Deneen and Helen Warner, equally, share and share alike. That no part of said residuary estate shall be paid over to Allan P. McKain, or his successor, in trust or otherwise.

Judgment is hereby directed accordingly in favor of Mary Carey, with costs payable out of the estate.